IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JONATHAN DOCTOR,    #267686,           ) | Civil Action No. 3:07-1519-HMH-JRM |
|                                        ) | |
|                    Plaintiff,          ) | |
|                                        ) | |
|         vs.                            ) | |
|                                        ) | |
| DIR. JOE OZMINT;                       ) | |
| WARDEN STEVENSON (BRCI);               ) | |
| WARDEN MCCABE (BRCI);                  ) | |
| MAJOR EDDIE GORE (BRCI);               ) | |
| SGT. MARTIN (BRCI);                    ) | |
| MURRY UNIT C/O, WORKING ON 3/31/07;    ) | |
| AND CAPTAIN WASHINGTON, WORKING ON     ) | |
| 3/31/07,                               ) | **AMENDED** |
|                                        ) | **REPORT AND RECOMMENDATION** |
|                    Defendants.         ) | |
|                                        ) | |

Plaintiff filed this action on May 31, 2007.[1] His allegations concern incidents that occurred while he was an inmate at the Broad River Correctional Institution ("BRCI") of the South Carolina Department of Corrections ("SCDC"). Plaintiff is currently an inmate at the McCormick Correctional Institution of the SCDC. Defendants are SCDC Director Joe Ozmint ("Ozmint"), BRCI Warden Stevenson ("Stevenson"), BRCI Associate Warden McCabe ("McCabe"), Major Eddie Gore ("Gore"), Sergeant Martin ("Martin"), Captain Washington ("Washington"), and an unidentified Murry Unit Correctional Officer. On December 3, 2007, Defendants filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on December 7, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants'

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because these are dispositive motions, this report and recommendation is entered for review by the court.

motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed an affidavit on February 14, 2007.

The undersigned, on May 28, 2008, recommended that Defendants' motion for summary judgment be granted. Plaintiff filed a response in opposition to Defendants' motion for summary judgment on June 2, 2008.[2] On June 4, 2008, the Honorable Henry M. Herlong, Jr., United States District Judge, referred this action back to the undersigned to address Plaintiff's response in an amended report and recommendation. Defendants filed a reply to Plaintiff's pleading on June 5, 2008.

On June 6, 2008, Plaintiff filed a pleading titled "Motion to Alt[e]r or Amend the Judgment." Defendants filed a response on June 10, 2008.

## DISCUSSION

Plaintiff alleges that Defendants failed to protect him from an attack by other inmates. He alleges failure to protect, failure to train staff, gross negligence, and cruel and unusual punishment. In his June 2, 2008 response, Plaintiff appears to assert a claim for medical deliberate indifference. Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to state a claim upon which relief can be granted; (2) the matters asserted by Plaintiff do not fall within the scope of 42 U.S.C. § 1983; (3) they cannot be held liable in a supervisory capacity for any acts of others over which they had no control; (4) they are entitled to qualified immunity; (5) Plaintiff failed to allege Federal Court jurisdiction in his complaint; (6) they are entitled to Eleventh Amendment immunity; (7) this action should be dismissed as a matter of law to the extent they are sued in their

---

[2]To the extent that this a response in opposition to Defendants' motion for summary judgment it is untimely, as it was filed nearly six months after the response was due (January 10, 2008).

official capacity because they are not "persons" under § 1983; and (8) Plaintiff's complaint lacks an arguable basis in law and should be dismissed as frivolous under 28 U.S.C. §§ 1915(e)(2)(B)(e) and 1915A(b)(1).

### 1. Failure to Protect

Plaintiff alleges that he was assaulted by a group of inmates at around 1:00 or 2:00 a.m. on March 31, 2007, causing him serious internal and external physical injuries as well as mental and emotional trauma. Specifically, he claims that although his cell was supposed to be deadlocked at 11:30 p.m. for the rest of the night, he awoke around 1:00 to 2:00 a.m. when a group of inmates entered his room, beat and kicked him, put him in a choke hold, twisted his left foot and knee, pounded on his face and head, and twisted his finger. Plaintiff claims that at least two doors were opened by someone who was already "on the rock," after 1:00 a.m., the only persons allowed on the rock are officers, anyone else would need permission from the correctional officers to be there, and a correctional officer must have opened his cell for the attack to happen. Additionally, Plaintiff appears to claim that correctional officers should have heard him screaming and come to his aid. Plaintiff alleges that after the attack, correctional officers came to his cell; they said something about it was 3:00, but they had to wait until 7:00; and put him back in his bunk while he was still bleeding. Complaint at 3-4. Defendants contend that Plaintiff fails to allege or show that he was incarcerated under conditions which imposed a substantial risk of serious harm. They argue that Plaintiff fails to show deliberate indifference because he has not shown that Defendants had actual knowledge of the existence of any substantial risk to Plaintiff or that there was a possibility that the risk could cause serious harm. Defendants contend that Plaintiff fails to make any specific allegations as to how any of them violated Plaintiff's rights.

Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). Not every injury suffered by one inmate at the hands of other inmates, however, translates into constitutional liability for the prison officials responsible for the victim's safety. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). In Farmer, the Supreme Court defined deliberate indifference, holding that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id., at 847. The test is not whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregard that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id., at 837. While the objective information known to the official may be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive. Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. Whitley v. Albers, 475 U.S. 312, 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991), cert. denied, 502 U.S. 828 (1991); Pressly, supra.

Plaintiff fails to establish an Eighth Amendment claim because he has not shown that Defendants knew of a specific risk of harm to him and consciously disregarded that risk. Warden Stevenson states that he has no personal knowledge of the matters alleged by Plaintiff; he was not at BRCI on the night of March 31, 2007; and did not recall receiving any correspondence from Plaintiff that Plaintiff felt threatened or had been threatened by another inmate. Stevenson Aff.

4

Sergeant Martin states that on March 31, 2007 he was working as the Yard[3] Sergeant at BRCI; he was not assigned to any dorm and was not working in the dorm where Plaintiff was housed on the night of the alleged incident; he did not have any direct involvement with and had no first hand knowledge of the matters alleged by Plaintiff; and he has no recollection of speaking with or receiving any correspondence from Plaintiff concerning matters in the complaint. Martin Aff. Major Gore states that he was in Delaware on March 31, 2007 and was not at BRCI. Additionally, Major Gore states that he does not recall ever speaking with Plaintiff and does not recall receiving any correspondence from Plaintiff stating that Plaintiff felt threatened or had been threatened by another inmate. Gore Aff. Captain Washington states that he was in New Jersey on March 31, 2007 and does not recall ever speaking with Plaintiff or receiving any correspondence concerning any threats. Washington Aff. SCDC Director Ozmint states that he was not at BRCI on the night of March 31, 2007; he has no personal knowledge or involvement in the alleged matter; and did not recall ever speaking with Plaintiff or receiving correspondence from him concerning a threat by another inmate. Ozmint Aff. BRCI Associate Warden McCabe states that he was not at BRCI on the night of March 31, 2007 and does not recall ever speaking with Plaintiff or receiving correspondence from him concerning a threat by another inmate. McCabe Aff.

Plaintiff fails to show that his constitutional rights were violated. He has not shown that Defendants knew he faced a substantial risk of serious harm or that they consciously disregarded that risk. In his complaint, Plaintiff has not made any specific claims against any of the Defendants. As discussed above, Defendants Ozmint, Stevenson, McCabe, Gore, and Washington all state that they were not at BRCI at the time of the alleged incidents. Defendant Martin states that he was

---

[3]The Yard is the common area between the buildings at BRCI.

working in the BRCI Yard and was not in the dorms at the time of the alleged incidents. Plaintiff has not alleged that he told any Defendant that he felt threatened or that any inmate made a threat against him. In his December 14, 2007 affidavit, Plaintiff claims for the first time that Defendant Martin and an officer named Dybowski[4] locked his cell at 11:30 p.m. and that Martin or Dybowski must have later opened his door. Plaintiff has only presented his own speculation that one of these correctional officers may have opened his cell door. After the alleged incident, Plaintiff stated to medical personnel (both at SCDC and at a private hospital) that he had fallen out of bed. See Dash-Frazier Aff.-Plaintiff's Medical Records. Despite this, Defendants thought that Plaintiff may have been assaulted by other inmates and they took measures to prevent any further attack by placing Plaintiff on protective custody and later transferring him to another SCDC institution. See Gore Aff.

Further, to the extent that Plaintiff claims that Defendants were negligent or grossly negligent, he fails to establish a § 1983 claim. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 238-36 & n. 3 (1986); Ruefly v. Landon, 825 F.2d 792, 798-94 (4th Cir. 1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995). Furthermore, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago Dep't. of Social Services, 489 U.S. 189, 200-03 (1989).

  2. Medical Claims

In his June 2, 2008 pleading, Plaintiff appears to assert that Defendants were deliberately indifferent to his medical needs because they delayed getting medical help for him. Defendants contend that Plaintiff fails to establish medical deliberate indifference because Plaintiff

---

[4]Dybowski has not been named a defendant in this action.

was taken to the medical department within a reasonable amount of time and because Plaintiff fails to show any action or inaction on the part of Defendants as to Plaintiff's care.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> \* \* \* \* \* \* \*
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. Defendants have submitted Plaintiff's extensive medical records which show that Plaintiff's injuries were assessed by medical personnel at SCDC a few hours after the attack. He

was then taken to Palmetto Richland Memorial Hospital. CTs of Plaintiff's head and cervical spine were negative. X-rays of his ankles were negative and an x-ray of his right hand revealed a fracture to his finger. A subconjunctival hemorrhage of his left eye was diagnosed. Plaintiff's right finger and right ankle were splinted and he was discharged. He was instructed to use Motrin or Tylenol for pain. No prescriptions were given. Brenda Dash-Frazier Aff., Attachments.

In his June 2, 2008 response, Plaintiff appears to claim that Defendants were deliberately indifferent because they stated in their answers to interrogatories that it took close to eight hours to take him for medical care. Review of the interrogatory, however, reveals that they responded that Plaintiff was seen at some point prior to 10:12 a.m. Defendants contend that the medical record entries are generally not made until after the inmate was seen, indicating that Plaintiff was seen earlier. They also state that the incident report shows that Plaintiff was taken to the medical department at approximately 7 a.m.

An Eighth Amendment violation only occurs if the delay results in some substantial harm to the patient. See, e.g., Webb v. Hamidullah, ___ F.3d ___, 2008 WL 2337608 (4th Cir. 2008); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir.2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993) (same); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990) (same). But see Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir.2004) ("This [constitutional] violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm [of which prison officials are aware]."). Plaintiff has not shown any substantial harm from any delay in treating him and there is no indication that he required any prescription medication for pain.

9

Even if Plaintiff were to show substantial harm from a delay in treatment, he fails to show that any action or inaction by any of the named Defendants caused him harm and thus he fails to state a constitutional claim against Defendants.

3. <u>Supervisory Liability</u>

Plaintiff alleges that Defendants failed to train staff. Complaint at 2 and 5. Defendants contend that they cannot be held liable as a matter of law in a supervisory capacity for any acts of others over which they have no control. The doctrine of respondeat superior generally is inapplicable to § 1983 and <u>Bivens</u> actions, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. <u>See</u> <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978); <u>Fisher v. Washington Metro Area Transit Authority</u>, 690 F.2d 1133, 1142-43 (4th Cir. 1982); <u>Wright v. Smith</u>, 21 F.3d 496 (2d Cir. 1994); and <u>Howard v. Federal Bureau of Prisons</u>, 1999 WL 798883, 198 F.3d 236 (4th Cir. 1999)[Table]. Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984), <u>cert. denied</u>, <u>Reed v. Slakan</u>, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendants were personally responsible for any of the alleged incidents. Further, Plaintiff has not shown that Defendants were deliberately indifferent to, or tacitly authorized, any of these alleged actions or inactions. Thus, Plaintiff cannot show that Defendants are liable on a theory of respondeat superior or supervisory liability.

4.      <u>Immunity</u>

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also argue that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

      5.     <u>State Law Claims</u>

Plaintiff appears to assert claims under South Carolina law. Any such claims are based on state law and premised on supplemental jurisdiction. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims would

remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

## MOTION TO ALTER OR AMEND THE JUDGMENT

On June 6, 2008, Plaintiff filed a pleading titled "Motion to Alt[e]r or Amend the Judgment." He requests leave to file an amended complaint adding a party in response to the section of the report and recommendation titled "Immunity." Plaintiff writes:

> Since the filing of the Complaint the Plaintiff has determined that the name of the Murry [sic] Unit C/O working is "Dybowski," and I would like to file against him and all of the above defendants and SCDC as both in their Professional and Personal capacit[ies].

On June 10, 2008, Defendants filed a response. They contend that Plaintiff's motion should be denied because: (1) there is no judgment to alter or amend as no order issued in this case; (2) to the extent that this is an objection to the Report and Recommendation, Plaintiff sets forth no basis to oppose Defendants' Motion for Summary Judgment; (3) Plaintiff is trying to assert a claim against an additional individual and wants to continue his claim against the current Defendants, but sets forth no additional basis for liability against them; (4) to the extent this is a motion to amend, it should be denied as untimely; and (5) to the extent Plaintiff wishes to assert an action against Defendants in their personal capacities, amendment is unnecessary as the current action already asserts this.

Plaintiff's motion to alter or amend judgment should be denied as no judgment has been entered. To the extent that Plaintiff's motion is one to amend, it should be denied as prejudicial and futile.

Pursuant to Fed. R. Civ. P. 15, a party may amend his pleading once at any time before a responsive pleading has been filed. After the opposing party has answered (Defendants filed an

answer on September 14, 2007), however, a plaintiff must seek leave of the court to amend. Although Rule 15(a) mandates that leave to amend pleadings should be granted freely where justice requires, "[m]otions to amend are committed to the discretion of the trial court." Keller v. Prince George's County, 923 F.2d 30, 33 (4th Cir. 1991). Delay alone is not sufficient reason to deny leave to amend, but must be accompanied by prejudice, bad faith, or futility. See Foman v. Davis, 371 U.S. 178 (1962); Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986); Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir.), modified, 856 F.2d 111 (9th Cir. 1988)("if a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied, even if prior to a responsive pleading, if amendment would be futile").

Here, Plaintiff's motion to amend was filed after discovery ended. From his affidavit (Doc. 41) filed in opposition to Defendants' motion for summary judgment, it is clear that Plaintiff knew of this person's name for almost six months before he filed his motion to amend. Defendants have filed a motion for summary judgment. Plaintiff has unduly delayed his motion and allowing him to amend or supplement at this time would be prejudicial to Defendants. See Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987)(amended complaint), cert. denied, 485 U.S. 977 (1988); Walker v. United Parcel Serv., 240 F.3d 1268, 1278-1279 (supplemental claim).

Further, Plaintiff's motion to amend would be futile. He did not file a proposed amended complaint with his motion. Plaintiff, however, appears to be attempting to substitute a person named "Dybowski" for the Defendant "Murry Unit CO" and to sue Defendants in both their official and personal capacities. As discussed above, Plaintiff fails to show that Defendants should be held liable for a failure to protect him because he has not shown that they knew of a specific risk of harm to him and consciously disregarded that risk. He also fails to show that Defendants were deliberately

indifferent to any of his serious medical needs. Plaintiff appears to have brought this action against Defendants in both their individual and official capacities and the complaint has been treated as such by Defendants, thus no amendment is required.

## CONCLUSION

Based upon review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 37) be granted. It is also recommended that Plaintiff's motion to alter or amend the judgment (Doc. 54) be denied.

> Respectfully submitted,
>
> s/Joseph R. McCrorey
> United States Magistrate Judge

August 5, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).